UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATHAN T. PULLINS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case # 1:18-cv-01303-DB |
| COMMISSIONER OF SOCIAL SECURITY, | § § § | MEMORANDUM DECISION AND ORDER |
| Defendant. | § | |

# INTRODUCTION

Plaintiff Nathan T. Pullins ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 15. Plaintiff also filed a reply. *See* ECF No. 18. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **DENIED**, and the Commissioner's motion (ECF No. 15) is **GRANTED**.

# BACKGROUND

On December 19, 2014, Plaintiff protectively filed his application for SSI benefits, pursuant to Title XVI of the Act, alleging a disability beginning on February 16, 2014 (the disability onset date), due to: gout, hypertension, chronic kidney disease, diabetes, depression, and anxiety. Transcript ("Tr.") 76-82, 176, 210. Plaintiff's claim was denied initially on February 25, 2015 (Tr. 85-107), after which he requested an administrative hearing. Plaintiff's hearing was held

via video on July 25, 2017. Tr. 24, 35-72. Administrative Law Judge David Begley (the "ALJ") presided over the hearing from Alexandria, Virginia. Tr. 24. Plaintiff appeared and testified at the hearing in Buffalo, New York and was represented by Jonathan Emdin, an attorney. *Id*. Kristin Panella, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on September 20, 2017, finding Plaintiff not disabled. Tr. 34. On September 20, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-8. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his September 20, 2017 decision:

1. The claimant has not engaged in substantial gainful activity since December 19, 2014, the application date (20 CF'R 416.971 *et seq*.);

2. The claimant has the following severe impairments: hypertension and diabetes mellitus (20 CF'R 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c);[1]

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on November 9, 1951 and was 63 years old, which is defined as an individual closely approaching retirement age, on the date the application was filed (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a));

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 19, 2014, the date the application was filed (20 CFR 416.920(g)).

Tr. at 24-30.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

Accordingly, the ALJ determined that, based on the application for supplemental security income, protectively filed on December 19, 2014, Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 30.

## **ANALYSIS**

Plaintiff asserts two points of error: (1) The ALJ failed to explain how he arrived at the RFC finding; he did not explain the RFC in functional terms; and the RFC was not supported by any competent medical opinion evidence; and (2) the ALJ did not perform a proper evaluation of Plaintiff's credibility. *See* ECF No. 8-1 at 1. The Commissioner argues in response that the objective evidence does not support Plaintiff's allegations; none of Plaintiff's medical providers have identified any limitations that could be considered disabling; and the record supports the ALJ's finding that Plaintiff retained the capacity to perform medium work. The Court agrees.

As explained in further detail below, this appeal is much ado about nothing. Plaintiff's hemoglobin A1C ("H1AC") tests showed that his Type 2 diabetes was well controlled and often near normal lab value range. *See, e.g.*, Tr. 279-80, 304, 321, 332, 452, 454. There were no other noted medical complications associated with diabetes such as neuropathy (Tr. 330) or retinopathy (Tr. 329, 316, 428) in any of the medical records. His vision bilaterally was reported as 20/25. Tr. 436. His hypertension, although often uncontrolled, did not result in any functional impairments noted in the records (Tr.405, 440), other than as a possible contributing factor (along with prior cocaine use) to his kidney disease as noted by his estimated glomerular filtration rate ("eGFR").[2] Tr. 333. However, records also reflect lab values above 60, which would be interpreted as possible kidney disease. Tr. 322. Moreover, lab values for microalbumin were normal. Tr. 391, 393, 275.

---

[2] eGFR is a measure of kidney function. In adults, the normal eGFR number is more than 90. An eGFR below 60 for three months or more or an eGFR above 60 with kidney damage (marked by high levels of albumin in the urine) indicates chronic kidney disease. eGFR declines with age, even in people without kidney disease. *A to Z Health Guide: Estimated Glomerular Filtration Rate (eGFR)*, National Kidney Foundation, https://www.kidney.org/atoz/content/gfr (last visited December 6, 2019).

Records reflecting Plaintiff's self- reported history of gout most often note no flare ups. Tr. 324, 301.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

## I. Substantial Evidence Supports the ALJ's RFC Finding.

Plaintiff asserts error with respect to the ALJ's articulation of his reasons for reaching his RFC determination. Plaintiff claims that the ALJ failed to link his RFC with the evidence on which it relied, insisting the ALJ was required to include a "narrative discussion" in support of each conclusion reached. *See* ECF No. 8-1 at 6-7. That argument overstates the ALJ's obligation. "An ALJ's failure to express a claimant's RFC in a function-by-function analysis does not necessarily mandate remand so long as the RFC is otherwise supported by substantial evidence." *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 313 (W.D.N.Y. 2013) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("We decline to adopt a *per se* rule . . . . Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed."). That standard was met in this case.

As Plaintiff notes, SSR 96-8p addresses the ALJ's need to justify each conclusion reached (*see* ECF No. 8-1 at 6-7); however, that does not mean an ALJ must cite specific medical evidence

6

in the record to justify every part of the RFC determination. So long as an ALJ adequately explains the underlying evidentiary basis for his RFC determination, as he did in this case, he has satisfied the demands of SSR 96-8p. Thus, Plaintiff's "narrative discussion" argument fails.

The remainder of Plaintiff's argument concerns the absence of medical-opinion evidence and the ALJ's alleged duty to further develop the record. *See* ECF No. 8-1 at 6, 8-11. The underlying premise of Plaintiff's argument—that an ALJ must rely upon a medical opinion to formulate the RFC—is incorrect. It was not error for the ALJ to reach an RFC finding that did not coincide with a medical opinion. Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Moreover, the Second Circuit has rejected the notion that it is *per se* error for an ALJ to determine RFC without relying on a medical opinion. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (a medical source statement or formal opinion is not required when "the record contains sufficient evidence from which an ALJ can assess the petitioner's [RFC]."). The Second Circuit reached a similar conclusion in *Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order). The court rejected the argument that the ALJ's RFC finding was deficient, even in the absence of a supporting medical- source opinion. *See also Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016) (finding that substantial evidence supported the ALJ's RFC for light work, despite the lack of a supportive functional assessment from a physician).

Further, despite Plaintiff's assertions to the contrary (*see* ECF No. 8-1 at 8-11), an ALJ's duty to develop the record is not limitless. Most basically, an ALJ need not further develop the

7

record "when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *See Janes v. Berryhill*, 710 F.App'x 33, 34 (2d Cir. Jan. 30, 2018) (summary order (quoting *Perez*, 77 F.3d at 48); *see also Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. Jan. 8, 2015) (summary order) (although an ALJ has a duty to develop the record, where there are no obvious gaps and the ALJ possesses a complete medical history, he is under no obligation to seek a treating-source opinion (citations omitted)); *Pope v. Barnhart*, 57 F. App'x 897, 899 (2d Cir. 2003) (summary order) ("[a]n ALJ has an independent duty to resolve ambiguities and inconsistencies . . . [but] where the inconsistencies do not appear resolvable, the ALJ may decide based on the available evidence").

Plaintiff testified that he could not work due to his prostate problems. However, his Prostate-Specific Antigen ("PSA") test was 1.4, and his digital rectal exam was normal.[3] Tr. 318. He noted that Viagra worked well for him (Tr. 428), and he denied urinary symptoms (Tr. 404). He routinely denied depression and hopelessness. Tr. 428. He does his own housework, as well as his own cooking and laundry. Tr. 48-49. He also does odd jobs around the neighborhood (Tr. 43) and frequents the library (Tr. 48). He is able to attend church and socializes with friends and family. Tr. 51, 53. He testified he can walk four or five blocks before stopping. Tr. 56. He also testified that he could lift up to 50 pounds. Tr. 57. Then, incredulously, he testified (upon his attorney's prodding) that he would have difficulty even lifting a gallon of milk. Tr. 61. Additionally, although

---

[3] Prostate-specific antigen, or PSA, is a protein produced by normal, as well as malignant, cells of the prostate gland. The PSA test measures the level of PSA in a man's blood. PSA is often elevated in men with prostate cancer. African American men have a higher risk of prostate cancer. There is no specific normal or abnormal level of PSA in the blood, and levels may vary over time in the same man, but most doctors consider PSA levels of 4.0 ng/mL and lower as normal. However, recent studies have shown that some men with PSA levels below 4.0 ng/mL have prostate cancer and that many men with higher levels do not have prostate cancer. In general, however, the higher a man's PSA level, the more likely it is that he has prostate cancer. Men with prostate symptoms often undergo PSA testing along with a digital rectal exam to determine the nature of the problem. *PSA Fact Sheet*, National Cancer Institute at the National Institutes of Health, https://www.cancer.gov/types/prostate/psa-fact-sheet (last visited December 6, 2019).

he testified that he has to urinate every thirty minutes, nothing in his medical records note problems with frequent urination. Tr. 404.

The medical records notwithstanding, there is ample evidence in the record from Plaintiff's own testimony to support the RFC reached. The record in this case simply does not contain sufficient evidence on which a finding of disability could be based. Plaintiff seeks to shift the burden of producing such evidence to the Commissioner, but Plaintiff himself is required to provide such evidence. Consistent with the regulations and case law, the ALJ considered the entire evidentiary record when formulating Plaintiff's RFC. *See Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017). The ALJ's RFC finding satisfies the deferential substantial-evidence test, as does his ultimate decision.

## II. The ALJ Properly Analyzed the Consistency of Plaintiff's Complaints.

Plaintiff also argues that the ALJ did not set forth his reasons for discrediting Plaintiff's subjective statements about his symptoms. *See* ECF No. at 11-13. Plaintiff is incorrect. Throughout his decision, the ALJ explained why Plaintiff's subjective statements were not entirely consistent with the evidence as a whole. In reaching his conclusion, the ALJ relied upon the objective evidence of record, the effectiveness of treatment in addressing Plaintiff's physical symptoms, other inconsistencies, and the medical opinion evidence of record. Substantial evidence supports the ALJ's findings.

Although an ALJ must consider Plaintiff's statements about his symptoms, the ALJ need not accept subjective complaints without question. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The Second Circuit recognizes that "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *See Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983), *abrogated on other grounds*. A reviewing court should give great deference to the

ALJ's judgment, because the ALJ heard the witness testify and observed his demeanor. *Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); *Serra v. Sullivan*, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991). Furthermore, it is the role of the ALJ to resolve conflicts in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Plaintiff contends the ALJ made only a conclusory statement that Plaintiff's allegations were not entirely consistent with the evidence of record, without pointing to any supporting evidence. *See* ECF No. 8-1 at 12-13 (citing Tr. 28). While the ALJ did not cite the specific evidence that supported his finding immediately thereafter, he discussed it in other parts of the decision (Tr. 26-29). Nothing more was required. *See Cichocki*, 729 F.3d at 178 n.3 (remand is not required "so long as the record 'permits us to glean the rationale of an ALJ's decision'") (quoting *Mongeur v. Heckler*, 772 F.2d 1033, 1040 (2d Cir. 1983)); *O'Connor v. Astrue*, No. 07-CV-141, 2009 WL 3273887, at *4 (W.D.N.Y. Oct. 9, 2009) (a reviewing court will consider the ALJ's decision in its entirety).

Most importantly, however, the ALJ found that the objective evidence of record simply did not support Plaintiff's allegations of disabling limitations. For example, Plaintiff alleged he was disabled due in part to gout. Tr. 26-28, 210. He even testified that gout forced him to stop working in 2014. Tr. 42. However, as the ALJ observed, the medical records indicated nothing more substantial than notations of gout "by report," and did not provide any evidence of recent flare-ups or specific treatment to address any such symptoms. Tr. 26-27, 437, 441, 445, 448. Further, in August 2016, Plaintiff reported that gout presented "no issues" at that time. Tr. 436. As the ALJ noted, although Plaintiff testified to more severe gout-related symptoms, the medical record belied those claims. Tr. 27-28, 58-59. Despite Plaintiff's testimony as to his complaints of gout, his brief does not even mention gout among his allegedly disabling conditions.

Plaintiff's claim of chronic kidney disease was equally unsupported by objective evidence. The ALJ recognized that Plaintiff had been diagnosed with moderate kidney disease. Tr. 26-27, 434, 438, 442. However, the record fails to document any functional limitations due to kidney disease that would more than minimally impair Plaintiff's capacity to perform work-related tasks. To meet his burden of proof, Plaintiff must establish such functional limitations, not mere diagnoses. *See* 20 C.F.R. § 416.945(e). Records also reflect that Plaintiff was exercising and planned to start senior classes. Tr. 423, 428. He also self-reported that there were no problems with his hypertension. Tr. 436. Plaintiff's short summary of treatment records also does not identify treatment for his kidney impairment. *See* ECF No. 8-1 at 2-3.

Plaintiff listed depression and anxiety among his disabling impairments, but the record does no more to support his allegations of mental disability than it does with respect to his alleged physical impairments. During the relevant period, Plaintiff repeatedly denied depression, and the record does not reflect any treatment by a mental health professional during the period for which Plaintiff now seeks SSI. Tr. 27, 432, 436, 440, 444, 447. Although Plaintiff's brief indicates that he received mental health treatment "from at least 2010 through the relevant time period," it also admits without explanation that he was discharged from care on April 15, 2014, some eight months prior to the start of the period under question in this appeal. *See* ECF No. 8-1 at 2 (citing Tr. 379). Plaintiff's brief fails to identify any abnormal findings relating to his mental condition during the relevant period.

Based on the foregoing, the objective evidence simply did not support the disabling level of limitations Plaintiff alleged. *See* 20 C.F.R. § 416.929(c)(2) (agency will consider "objective medical evidence" when evaluating symptoms); *Forbes v. Colvin*, No. 13-CV-207 MAT, 2015 WL 4411511, at *7 (W.D.N.Y. July 20, 2015) (ALJ properly found that claimant's subjective complaints were not fully credible based upon objective medical evidence); *Razo v. Astrue*, No.

04 CIV. 1348 PAC DF, 2008 WL 2971670, at *6 (S.D.N.Y. July 31, 2008) (stating that "where a claimant's complaints are 'out of proportion to the objective clinical findings,' it is permissible for the ALJ to find the claimant less than fully credible").

Thus, the absence of compelling objective evidence undermines the consistency of Plaintiff's claims. As the SSA regulations make clear, even when a claimant's testimony is fully accepted, his subjective claims alone are insufficient to prove disability. *See* 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled."). Given the lack of other evidence, particularly the absence of "medical signs and laboratory findings" in support of Plaintiff's allegations, the ALJ properly assessed Plaintiff's subjective complaints.

To the extent that Plaintiff argues his Global Assessment of Functioning ("GAF") scores establish that he experienced "moderate" mental-health symptoms during the relevant period, Plaintiff's argument is unpersuasive. *See* ECF No. 8-1 at 2. GAF scores are designed to consider factors outside those used in disability determinations. *See Wilson v. Berryhill*, No. 16-CV-00664V(F), 2018 WL 4211322, at *2 (W.D.N.Y. Sept. 4, 2018) (noting the GAF is a "multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information"). Furthermore, the Social Security Administration has limited the manner in which such scores are used. *See Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (explaining that the Administration issued a bulletin dated July 31, 2013, limiting use of GAF scores because the scores are so general that they are not

useful without additional supporting description and detail) (internal citations and quotations omitted).

With respect to Plaintiff's hypertension and diabetes, as discussed above, the ALJ acknowledged those impairments were severe, but also cited evidence that they did not lead to disabling functional limitations. Tr. 26, 29. Recent records show that even when Plaintiff's blood pressure was somewhat elevated, it did not lead to significant functional limitations. In August 2016, Plaintiff explicitly denied any problems related to hypertension. Tr. 29, 436. In March 2017, Plaintiff's provider set a goal of blood pressure readings under 140/90. Tr. 442. In subsequent months, Plaintiff met that goal, recording readings of 130/88 in both May and June of 2017. Tr. 534, 571. Additionally, Plaintiff did not testify to any hypertension-related symptoms at his July 2017 hearing. Moreover, the medical records are silent as to any commonly-known consequences of hypertension such as headaches or visual disturbances

Similarly, the ALJ recognized that Plaintiff's diabetes has not caused any functional limitations that could warrant a disability finding. Tr. 28-29. In February 2013, nearly two years prior to when he filed for SSI, Plaintiff's HA1C was stable at 6.5,[4] and his provider noted that he was "doing well with his diabetes management." Tr. 29, 279-80. In subsequent months, Plaintiff's HA1C was consistently in the 6.0 to 6.5 range. Tr. 29, 304, 321, 332, 452, 454. An August 2016 treatment note reported his HA1C as 6.5; found no worrisome results after his diabetic foot exam; characterized his condition as "without complications," and indicated that Plaintiff had merely "been on the edge of diabetes." Tr. 436, 438. At his hearing, Plaintiff confirmed that he did not take any medication for treatment of his diabetes. Tr. 56. The ALJ may properly consider that a claimant does not take prescription medication. *See Tappan v. Halter*, 10 Fed. App'x 30, 32 (2d

---
[4] "The target A1c level for people with diabetes is usually less than 7%. The higher the hemoglobin A1c, the higher your risk of having complications related to diabetes." *See* https://www.webmd.com/diabetes/guide/glycated-hemoglobin-test-hba1c (last visited December 3, 2019).

Cir. May 31, 2001). In sum, although the evidence of record establishes that Plaintiff has been diagnosed with hypertension and diabetes, neither of those conditions led to significant functional limitations during the period for which he now seeks SSI. Plaintiff's brief does not point to any evidence that would compel a different conclusion.

The ALJ also considered Plaintiff's daily activities as a factor undermining his claims of disabling impairment. Tr. 28. For example, Plaintiff testified that he frequently used public transportation and shopped in stores; cooked his own meals; did his own housekeeping; had no difficulties with personal care; and visited family and friends, including attending weekly church services. Tr. 45, 48-53. "The law is clear that the ALJ may consider a claimant's purported activities of daily living for the purposes of a credibility determination." *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) (quotation and alterations omitted); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ may rely on such activities to show that a claimant's allegation that she was disabled was not credible); *Wolfe v. Comm'r of Soc. Sec.*, 272 F.App'x 21, 22 (2d Cir. 2008) (ALJ properly discounted claimant's credibility based on her statements that she attended church, shopped, and attended weekly football games).

In addition to the above-mentioned activities, Plaintiff admitted that he looked for a job during the period he now claims to have been unable to work. Tr. 42. It is well settled that actively seeking work is inconsistent with disability. *See, e.g., Felix v. Astrue*, No. 11-CV-3697, 2012 WL 3043203, *10 (E.D.N.Y. July 24, 2012) (seeking employment indicates that a claimant is ready, willing and able to work during that time). Plaintiff alleges that he does not sleep well because he wakes frequently to use the bathroom at night, but he also admitted this had been an issue for about ten years, indicating that he had been able to hold his previous job(s) despite that alleged impairment. Tr. 28, 50-51.

Finally, the ALJ properly weighed and considered the one medical opinion found in the record, a State agency consulting examiner who reviewed Plaintiff's claim in February 2015. Tr. 29, 77-78. The ALJ explained that he gave the opinion little weight because the opinion was inconsistent with the objective medical evidence. Tr. 29. An ALJ is responsible for weighing opinion evidence, resolving disagreements among providers, if any, and giving good reasons for the weight assigned. See 20 C.F.R. § 416.927.

Based on the foregoing, the Court finds there is substantial support for the ALJ's conclusions that Plaintiff's subjective allegations and claims of disabling limitations were not entirely consistent with the evidence as a whole. Common sense would dictate such, and the Court finds this appeal is frivolous and a waste of judicial resources.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE